UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MANUELA Q. FRANCO,   Case No. 03-13492 tr7

    Debtor.

Consolidated with

In re:

MANUELA Q. FRANCO,   Case No. 13-12941 tr7

    Debtor.

## **OPINION**

Before the Court is a $667,620 proof of claim, the chapter 7 trustee's objection thereto, and the trustee's request for summary judgment sustaining his objection. The claim is for money damages for "disparagement" of claimant's title to certain mineral rights ($30,620), and for the value of those mineral rights ($637,000). The Court concludes that the trustee's summary judgment motion is well taken and should be granted, without prejudice, however, to claimant's right to assert her ownership of the mineral rights in a different proceeding.

### I.    FACTS[1]

For the purpose of ruling on the motion for summary judgment, the Court finds that the following facts are not in material dispute:

---

[1] The Court takes judicial notice of the docket in the main bankruptcy case and the associated adversary proceedings. In addition, some of the findings are from the Court's opinion entered July 28, 2017.

Debtor Manuela Franco is a 90-year old widow. Her husband Epolito Franco died in 1997 after suffering a series of strokes. Debtor and Epolito had two children, Celia Hougland[2] and Hipolito Franco.[3]

In 1969, Debtor and Epolito Franco acquired 240 acres in Eddy County, New Mexico, including a half interest in oil, gas, and other minerals on and under the land. On October 8, 1996, they conveyed 122 acres of the land to Hipolito Franco, as his sole and separate property (the "Property"). The deed, which was signed by Epolito Franco and Debtor (the "Original Deed"), did not reserve any oil, gas, or other minerals associated with the Property (the "Disputed Mineral Rights").

The understanding of the parties in October 1996 is disputed. Carla Franco testified that she and Hipolito paid for the Disputed Mineral Rights and always intended to acquire and keep them. Debtor, on the other hand, testified that she and Epolito conveyed the Property so they could obtain medical care for Epolito, but that they had always intended to bequeath their mineral rights, including the Disputed Mineral Rights, to their children in equal shares. Celia Hougland testified in a deposition that Hipolito confirmed Debtor's understanding, i.e., that Hipolito was expected to reconvey the Property and Disputed Mineral Rights to his parents once Epolito got the health care he needed.[4]

In 1998, Hipolito and Carla Franco applied for a loan from Western Commerce Bank. The loan was to be secured by a mortgage on the Property. On July 23, 1998, Guaranty Title Company

---

[2] Née Celia Franco, now married to Robert Hougland.
[3] Hipolito was married to Carla Franco. He died in April 2015. Carla Franco is now the sole plaintiff in the adversary proceeding, acting individually and as the personal representative of Hipolito Franco's probate estate.
[4] Deposition of Celia Hougland, p. 23-24, taken March 23, 2015, in the State Court Action. *See* Adv. Pro. No. 17-1001, doc. 57-3.

issued a commitment to insure the bank's first priority mortgage on the Property. The title commitment described the Property as "fee simple in the surface estate only." The metes and bounds description of the Property differed to some extent from that in the Original Deed.[5] More importantly, the title commitment's legal description begins with "The surface estate only of . . . ." One of the requirements for issuing a final policy of title insurance was:

> Record a correction warranty deed from Manuela Q. Franco, widow of Epolito V. Franco (record his death certificate) to Hipolito Q. Franco, a married man dealing in his sole and separate property.

One of the exceptions to insured title was:

> 11. Title to all of the water, oil, gas and other minerals and mineral substances, together with all right, privileges and easements appurtenant thereto.

On August 7, 1998, Debtor signed a warranty deed in favor of Hipolito Franco (the "Correction Deed"). The deed states on page one that it is "given to correct legal description on [the 1996 warranty deed]." The legal description attached to the Correction Deed is identical to the description in the title commitment, including the "surface estate only" language. Hipolito Franco did not sign the deed.

On August 7, 1998, Hipolito and Carla Franco granted Western Commerce Bank a mortgage on the Property (the "Mortgage"). The Mortgage uses the same legal description as the Correction Deed and the title commitment (including the "surface estate only" language). The Mortgage secures a promissory note payable to Western Commerce Bank, with a maximum indebtedness of $99,000. The Correction Deed and Mortgage were recorded one minute apart, on August 13, 1998.

---

[5] Some survey work may have been done to prepare the legal description in the title commitment. One of the calls in the title commitment legal description is longer by 47.02 feet than the analogous call in the 1996 deed, while another call is shorter by the same amount.

Debtor filed a chapter 7 case on April 30, 2003, and a second chapter 7 case on September 9, 2013. She received a discharge in each case. The latter case was closed on December 30, 2013. No mineral rights were listed in the bankruptcy schedules in either case.

On October 8, 2014, Hipolito and Carla Franco filed a complaint in New Mexico's Fifth Judicial District Court, commencing *Hipolito Q. Franco and Carla Franco v. Manuela Q. Franco, HV Franco Minerals, Robert D. Hougland, and Celia F. Hougland,* case no. D-503-CV-2014-00865 (the "State Court Action"). The complaint asserted counts to quiet title to the Disputed Mineral Rights; for damages for disparagement of title;[6] and for injunctive relief.

On November 12, 2014, Defendants answered the complaint. On the same date, they also filed a motion to dismiss the disparagement of title and injunction counts. Plaintiff's responded on December 1, 2014, and defendants filed a supporting reply on December 8, 2014.

The state court held a hearing on the motion to dismiss on March 23, 2015. On April 5, 2015, the state court entered an order dismissing the disparagement of title count (the "Dismissal Order").

Over a year later, on May 4, 2016, plaintiff Carla Franco filed a Motion for Leave to Amend Pleadings and Motion to Vacate Order of Dismissal (as amended, the "Motion to Amend and Vacate"). Defendants responded to the motion on May 19, 2016. Plaintiff did not file a reply in support.

---

[6] There is no "disparagement of title" cause of action under New Mexico law. The state court properly construed the claim as one for slander of title. The misnomer was corrected in Plaintiff's proposed amended complaint. Strangely, however, the counterclaim asserted by Carla Franco in adv. Pro. 17-1001 is again titled "disparagement of title." Further, the proof of claim is partly for of damages allegedly suffered because of Debttor's "disparagement of title."

-4-
Case 03-13492-t7    Doc 87    Filed 10/05/18    Entered 10/05/18 14:53:11 Page 4 of 9

Defendants filed a notice of bankruptcy and automatic stay on August 30, 2016.[7]

Carla Franco filed a proof of claim in the bankruptcy case on October 17, 2016, asserting a claim of $667,620 (the "Claim"). She filed the Claim as a secured claim; the alleged collateral is the Disputed Mineral Rights.

On December 23, 2016, Carla Franco removed the State Court Action to this Court.

On February 21, 2017, Plaintiffs filed in the main bankruptcy case a motion for *nunc pro tunc* relief from the automatic stay, or for a ruling that the stay did not apply, to the state court's entry of a quiet title judgment in the State Court Action. After a trial held in Roswell, New Mexico on April 13, 2017, the Court on July 28, 2017 entered an order denying the stay relief motion and ruling that the ownership of the Disputed Mineral Rights was a matter of bona fide dispute.

The Trustee objected to the Claim on May 8, 2018, and moved for summary judgment on June 22, 2018. Carla Franco timely responded to the summary judgment motion.

On October 3, 2018, the Court denied the Motion to Amend and Vacate. The ruling, which is denoted a final order pursuant to Rule 54(b), foreclosed Carla Franco's right to assert a slander of title claim against the Debtor or her estate.

### III.  DISCUSSION

A.  <u>Summary Judgment Standards</u>.

Summary judgment is appropriate if the pleadings, discovery papers, admissions, and any affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Rule 56 applies in adversary proceedings. *See* Fed. R. Bankr. P. 7056. "[A] party seeking summary judgment always bears the initial

---

[7] The bankruptcy cases were reopened in June 2016 (13-12941) and October 2016 (03-13492). Clarke Coll was appointed as the chapter 7 trustee in both cases (the "Trustee"), which were consolidated in November 2016.

responsibility of informing the district court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *F.D.I.C. v. Lockhaven Estates, LLC*, 918 F. Supp. 2d 1209, 1231 (D.N.M. 2012) (citing *Celotex*). Further, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324). To deny a motion for summary judgment, genuine fact issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 251; *Vitkus*, 11 F.3d at 1539.

B.  <u>Money Damages For "Disparagement of Title."</u>

Under New Mexico law, slander of title[8] occurs when "one who, without the privilege to do so, willfully records or publishes matter which is untrue and disparaging to another's property rights in land, as would lead a reasonable man to foresee that the conduct of a third purchaser might be determined thereby." *Den-Gar Enterprises v. Romero*, 94 N.M. 425, 430 (1980). In addition, malice is considered an "essential ingredient in a claim of slander of title." *Id.* In her original complaint filed in the State Court Action, Carla Franco alleged disparagement of title

---

[8] Like the state court, this Court treats Carla Franco's "disparagement of title" claim as a slander of title claim.

-6-

against the Debtor, but did not allege malice or that the Debtor "willfully and in bad faith slandered plaintiffs' title." Because malice is an essential element of a slander of title claim, the state court dismissed the disparagement of title claim.

A year later, Carla Franco filed the Motion to Amend and Vacate. On October 4, 2018, the Court denied the Motion to Amend and Vacate, based on undue delay, futility, and prejudice. Because of the Court's ruling, Carla Franco cannot assert a claim for damages against the Debtor or her bankruptcy estate based on alleged slander of title. As a result, the Court will sustain the Trustee's objection to $30,620 of the Claim.[9]

C. <u>Ownership of the Disputed Mineral Rights</u>.

Under the Bankruptcy Code, a claim is defined as "any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5). *See Jaurdon v. Cricket Communications, Inc.*, 412 F.3d 1156, 1158 (10th Cir. 2005) (quoting the rule); *In re Miller*, 666 F.3d 1255, 1262 (10th Cir. 2012) ("A 'claim' is a 'right to payment'").

The broad definition of a "right to payment" has been interpreted by the Supreme Court to mean "nothing more nor less than an enforceable obligation." *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990). However, because the "enforceable obligation" is to be "paid," a claim is distinguishable from an asserted ownership interest in property the estate may also claim to own. *See, e.g., In re Skorich*, 482 F.3d 21, 25-26 (1st Cir. 2007) (wife's equitable interest in marital property, obtained upon the filing of husband's divorce petition, is a property interest, not a claim); *In re Piasecki*, 171 B.R. 49, 51-52 (Bankr N.D. Ohio) (ownership of a portion

---

[9] In addition to the $30,620, the Claim also states that it is for "further damages not yet liquidated, attorney fees, expenses & int." The Court also sustains the Trustee's objection to these additional, unliquidated amounts.

of a pension plan does not give rise to a claim in an ex-spouse' bankruptcy case, where ex-spouse owns the other portion of the pension plan); *In re Katzburg*, 326 B.R. 606 (Bankr. D.S.C. 2004) (quoting and following *Piasecki*); *In re Bennett*, 175 B.R. 181, 183-84 (Bankr. E.D. Pa. 1994) (citing *Piasecki* and holding that equitable distribution rights in pensions plans are property interests rather than claims).

In her Claim, Carla Franco seeks money damages for "Debtor claiming title to property." This claim, she asserts, is secured by her "ownership" of the Disputed Mineral Rights (valued at $637,000). Apart from a claim for slander of title, addressed above, Carla Franco's strongly held position is that she owns the Disputed Mineral Rights. Her Claim thus cannot reasonably be read to assert that the *estate* owns the Disputed Mineral Rights, owing her $637,000 for them.[10]

Except for the alleged slander of title damages, Carla Franco is not asserting a right to payment, but rather the rights of ownership of the Disputed Mineral Rights. Her Claim therefore must be disallowed. She may prevail on her assertion that she owns the Disputed Mineral Rights, but that is for another proceeding, at another time. Disallowing her Claim will have no effect one way or the other on that issue.

---

[10] In support of her claim, Ms. Franco attached a copy of her Complaint to Quiet Title, To Recover Damages for Disparagement of Title and for Injunctive Relief. The complaint, which inter alia seeks to quiet title to the Disputed Mineral Rights, bolsters the Court's conclusion that the Claim reasserts Ms. Franco's ownership interest in the Disputed Mineral Rights, rather than a monetary claim for the value of those rights. Further, this interpretation is consistent with the position Carla Franco has taken throughout these proceedings and in the State Court Action, i.e., that she and only she owns the Disputed Mineral Rights.

## IV. CONCLUSION

Carlo Franco's Claim is for money damages arising from an alleged slander of title, and asserts her ownership of the Disputed Mineral Rights. As she is foreclosed from asserting a claim for slander of title, and as her asserted ownership of the Disputed Mineral Rights is not a right to payment, her Claim must be disallowed. The Court therefore will sustain the Trustee's Claim Objection, by a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 5, 2018

Copies to: counsel of record