UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MANUELA Q. FRANCO,                                                      Case No. 03-13492 tr7

    Debtor.

Consolidated with:

In re:

MANUELA Q. FRANCO,                                                      Case No. 13-12941 tr7

    Debtor.

## **OPINION**

Before the Court is Carla Franco's motion to extend the time to appeal the Court's disallowance of her claim. The motion hinges on whether Ms. Franco's failure to appeal timely was due to "excusable neglect." Having reviewed the motion and the facts of the case, the Court finds and concludes that excusable neglect has not been shown. The motion therefore will be denied.

### I.     FACTS[1]

Debtor Manuela Franco is a 90-year old widow. Her husband Epolito Franco died in 1997. Debtor and Epolito had two children, Celia Hougland[2] and Hipolito Franco.[3]

---

[1] The Court takes judicial notice of the docket in the main bankruptcy case and the associated adversary proceedings. In addition, some of the findings are from the Court's opinions entered July 28, 2017 and October 5, 2018.

[2] Née Celia Franco, now married to Robert Hougland.

[3] Hipolito was married to Carla Franco. He died in April 2015. Carla Franco is now the sole plaintiff in the adversary proceeding, acting individually and as the personal representative of Hipolito Franco's probate estate.

In 1969, Debtor and Epolito Franco bought 240 acres in Eddy County, New Mexico, including a half interest in oil, gas, and other minerals on and under the land. On October 8, 1996, they conveyed 122 acres of the land (the "Property") to Hipolito Franco, as his sole and separate property. The deed did not reserve any oil, gas, or other minerals associated with the Property (the "Disputed Mineral Rights").

Carla Franco asserts that she and Hipolito paid for the Disputed Mineral Rights and always intended to acquire and keep them. Debtor, on the other hand, claims that she and Epolito conveyed the Property so they could obtain medical care for Epolito, but that they had always intended to bequeath their mineral rights, including the Disputed Mineral Rights, to their children in equal shares. Celia Hougland claims that Hipolito confirmed this arrangement, i.e., that he was expected to reconvey the Property and Disputed Mineral Rights to his parents once Epolito got the health care he needed.[4]

In 1998, Hipolito and Carla Franco applied for a loan from Western Commerce Bank. The loan was to be secured by a mortgage on the Property. On July 23, 1998, Guaranty Title Company issued a commitment to insure the bank's first priority mortgage on the Property. The title commitment described the Property as "fee simple in the surface estate only." The metes and bounds description of the Property differed slightly from that in the 1996 deed. More importantly, the title commitment's legal description begins with "The surface estate only of . . . ." One of the requirements for issuing a final policy of title insurance was:

> Record a correction warranty deed from Manuela Q. Franco, widow of Epolito V. Franco (record his death certificate) to Hipolito Q. Franco, a married man dealing in his sole and separate property.

---

[4] Deposition of Celia Hougland, p. 23-24, taken March 23, 2015, in the State Court Action. *See* Adv. Pro. No. 17-1001, doc. 57-3.

One of the exceptions to insured title was:

> 11. Title to all of the water, oil, gas and other minerals and mineral substances, together with all right, privileges and easements appurtenant thereto.

On August 7, 1998, Debtor signed a warranty deed in favor of Hipolito Franco (the "Correction Deed"). The deed states on page one that it is "given to correct legal description on [the 1996 deed]." The legal description attached to the Correction Deed is identical to the description in the title commitment, including the "surface estate only" language. Hipolito Franco did not sign the deed.

On the same day Hipolito and Carla Franco granted Western Commerce Bank a mortgage on the Property. The mortgage uses the same legal description as the Correction Deed and the title commitment, including the "surface estate only" language. The mortgage secures a $99,000 promissory note. The Correction Deed and mortgage were recorded on August 13, 1998.

Debtor filed a chapter 7 case on April 30, 2003, and a second chapter 7 case on September 9, 2013. She received a discharge in each case. The latter case was closed on December 30, 2013. No mineral rights were listed in the bankruptcy schedules in either case.

On October 8, 2014, Hipolito and Carla Franco filed a complaint in New Mexico's Fifth Judicial District Court, commencing *Hipolito Q. Franco and Carla Franco v. Manuela Q. Franco, HV Franco Minerals, Robert D. Hougland, and Celia F. Hougland,* case no. D-503-CV-2014-00865 (the "State Court Action"). The complaint asserted counts to quiet title to the Disputed Mineral Rights, for "disparagement of title,"[5] and for injunctive relief.

---

[5] There is no "disparagement of title" cause of action under New Mexico law. The state court properly construed the claim as one for slander of title. The misnomer was corrected in Plaintiff's proposed amended complaint. Strangely, however, the counterclaim asserted by Carla Franco in adv. Pro. 17-1001 is again titled "disparagement of title." Further, the proof of claim is partly for of damages allegedly suffered because of Debtor's "disparagement of title."

-3-
Case 03-13492-t7    Doc 117    Filed 03/12/19    Entered 03/12/19 15:17:34 Page 3 of 11

On November 12, 2014, defendants answered the complaint and moved to dismiss the disparagement/slander of title claim. On April 5, 2015, the state court dismissed the disparagement of title count.

Over a year later, Carla Franco filed a motion to amend their complaint to reassert disparagement of title (as amended, the "Motion to Amend and Vacate"). Defendants responded to the motion on May 19, 2016. Before the state court could rule, defendants filed a notice of bankruptcy and automatic stay.[6]

Carla Franco filed a $667,620 secured proof of claim in the bankruptcy case on October 17, 2016, (the "Carla Franco Claim"). A portion of the amount claimed is alleged damages for "disparagement of title."

On December 23, 2016, Carla Franco removed the State Court Action to this Court. On January 16, 2017, the Trustee filed an adversary proceeding against Carla Franco to quiet title to the Disputed Mineral Rights (the "Quiet Title Proceeding").

On February 21, 2017, Plaintiffs filed a motion for relief from stay so the state court could quiet title to the Disputed Mineral Rights in Plaintiffs. On April 13, 2017, the Court denied the motion and ruled that ownership of the Disputed Mineral Rights was in bona fide dispute.

The Trustee objected to the Carla Franco Claim on May 8, 2018.

On October 3, 2018, the Court denied the Motion to Amend and Vacate (pending in the removed State Court Action). The ruling foreclosed Carla Franco's right to assert a slander of title claim against the Debtor or her estate. Based on the ruling, on October 5, 2018, the Court disallowed the Carla Franco Claim (the "Claim Disallowance Order"). Similarly, on October 11,

---

[6] The bankruptcy cases were reopened in June 2016 (13-12941) and October 2016 (03-13492). Clarke Coll was appointed as the chapter 7 trustee in both cases (the "Trustee"), which were consolidated in November 2016.

2018, the Court dismissed Carla Franco's disparagement of title claims in the Quiet Title Proceeding.

On October 17, 2018, Carla Franco filed identical "Post Judgment Motions" in the removed State Court Action and the Quiet Title Proceeding.[7] The Post Judgment Motions were not filed in the main case.

The deadline to appeal the Claim Disallowance Order was October 29, 2018. Carla Franco missed the deadline. On November 9, 2018, Carla Franco filed the motion to extend the time to appeal.

## II. DISCUSSION

A. <u>The Claim Disallowance Order Is a Final Order</u>.

The Claim Disallowance Order is a final order for the purposes of appeal. *In re Geneva Steel Co.*, 260 B.R. 517, 520 (10th Cir. BAP 2001), aff'd, 281 F.3d 1173 (10th Cir. 2002) (an "order on an objection to a claim is a final order for purposes of 28 U.S.C. § 158(a)(1)."); *see also In re Garner,* 246 B.R. 617, 619 (9th Cir. BAP 2000) (same).

B. <u>Ms. Franco Had 14 Days to Appeal</u>.

Bankruptcy Rule[8] 8002(a)(1) provides:

(a) In general
  (1) Fourteen-day period
    Except as provided in subdivisions (b) and (c), a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed.

There is no dispute that Carla Franco did not file a timely notice of appeal.

C. <u>Ms. Franco's Request for an Extension</u>.

---

[7] There are three motions in the Post Judgment Motions. One relates to the removed State Court Action, one to the Quiet Title Action, and one to the Claim Disallowance Order.
[8] Federal Rule of Bankruptcy Procedure.

-5-
Case 03-13492-t7    Doc 117    Filed 03/12/19    Entered 03/12/19 15:17:34 Page 5 of 11

Bankruptcy Rule 8002(d)(1)(B) provides:

(d) Extending the time to appeal
   (1) When the time may be extended
   Except as provided in subdivision (d)(2), the bankruptcy court may extend the time to file a notice of appeal upon a party's motion that is filed:
      (A) within the time prescribed by this rule; or
      (B) within 21 days after that time, if the party shows excusable neglect.

Ms. Franco asks for more time, arguing that her failure to file within 14 days was due to excusable neglect.

    1.    <u>Case Law on Excusable Neglect</u>. The Supreme Court construed the term "excusable neglect"[9] in *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship,* 507 U.S. 380 (1993). Although *Pioneer* dealt with Bankruptcy Rule 9006(b)(1), its interpretation of excusable neglect informs "every court rule in which that term is used." *In re Bayer*, 527 B.R. 202, 208 (Bankr. E.D. Pa. 2015), *aff'd,* 558 B.R. 722 (E.D. Pa. 2016), citing *In re American Classic Voyages Co.,* 405 F.3d 127, 133 (3d Cir. 2005); *see also United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004) (unless there is a specific reason not to do so, the Tenth Circuit will apply *Pioneer's* interpretation of excusable neglect wherever the term is found).

In *Pioneer*, the Supreme Court concluded that excusable neglect is a "somewhat 'elastic concept'" and is not "limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392. The court advised that the determination of excusable neglect is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. *Pioneer* provided four factors to consider in determining whether neglect was excusable:

    --The danger of prejudice to the debtor (non-moving party);
    --The length of delay and its potential impact on judicial proceedings;
    --The reason for delay, including whether it was within the reasonable control of the movant; and

---

[9] The term is found in, inter alia, Fed. R. Bankr. P 9006(b)(1), Fed. R. Civ. Pro. 6(b)(1)(B), Fed. R. Civ. Pro. 60(b), and Fed. R. App. Pro. 4(a)(5)(A)(ii) and 4(b)(4)..

--Whether the movant acted in good faith.

*Id.*

Courts give the greatest weight to the third factor, viz., the reason for the delay and whether it was within the movant's reasonable control. *See United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) ("fault in the delay remains a very important factor-perhaps the most important single factor-in determining whether neglect is excusable"); *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) ("despite the flexibility of "excusable neglect" and the existence of the four-factor test . . . we and other circuits have focused on the third factor"); *In re Sheedy*, 875 F.3d 740, 744 (1st Cir. 2017) ("The reason for the delay is the most important of the *Pioneer* factors."); *Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc.,* 270 F.3d 1, 5 (1st Cir. 2001) (the four factors do not carry equal weight; the excuse for the late filing must have the greatest import); *Lowry v. McDonnell Douglas Corp.,* 211 F.3d 457 (8th Cir. 2000) (same).

Despite the "elastic" nature of excusable neglect, it is not an easy standard to meet. In *City of Chanute, Kansas v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994), the Tenth Circuit cited *Pioneer* and stated: "This is not to say that the test for excusable neglect is not a strict one."). 31 F.3d at 463. The *Sheedy* court stated: "demonstrating excusable neglect is a demanding standard." 875 F.3d at 743, quoting *Santos-Santos v. Torres-Centeno*, 842 F.3d 163, 169 (1st Cir. 2016). In *Thompson v. E.I. DuPont de Nemours & Co., Inc.,* 76 F.3d 530, 534 (4th Cir. 1996), the court held that excusable neglect "is not easily demonstrated, nor was it intended to be." The Court then quoted Judge Friendly, a member of the advisory committee which drafted Rule 4(a) of the Federal Rules of Appellate Procedure:

> a loose interpretation of "excusable neglect" would convert the 30–
> day period for appeal provided in [Rule] 4(a) into a 60–day one—a

> result clearly not intended by the Rule's framers. Hence, "the burden of demonstrating excusability lies with the party seeking the extension and *a mere concession of palpable oversight or administrative failure generally has been held to fall short of the necessary showing....*"
>
> *In re O.P.M. Leasing Serv., Inc.,* 769 F.2d 911, 917 (2d Cir.1985) (emphasis added) (quoting 9 J. Moore & B. Ward, Moore's Federal Practice ¶ 204.13[1.–3], at 4–97 to 4–98 (2d ed. 1985) (footnotes omitted)). As the advisory committee notes to Federal Rule of Civil Procedure 73, from which Rule 4(a) is derived, emphasize, a district court should find "excusable neglect" only in the "*extraordinary cases where injustice would otherwise result.*" Notes to 1964 Fed.R.Civ.P. 73(a) (emphasis added).

*Thompson v. DuPont*, 76 F.3d at 534; *see also Chihota v. Fulton, Friedman & Gullace, LLP*, 2012 WL 1319816, at *2 (D. Md.) ("a showing of excusable neglect is a demanding standard"). The Fifth Circuit has held:

> The burden of establishing excusable neglect is upon an appellant, even one proceeding pro se. Our circuit's rule is that the excusable neglect standard is a strict one, requiring more than mere ignorance. Failure to learn of the entry of judgment is the major, but not the only, reason for finding excusable neglect. Other unique circumstances may render the dismissal unfair. The party requesting the extension must make a clear showing that the circumstances causing the delay were unique and that the neglect was excusable. Courts should sanction deviations from the letter of the rules only on the most compelling showing that the purposes of the rules are served.

*Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir. 1981); *see also United States v. Gomez-Hernandez*, 2007 WL 737410, at *2 (S.D. Tex.) (quoting *Birl*); *In re Edwards*, 748 Fed. App'x 695, 698 (6th Cir. 2019) ("Since the Court decided *Pioneer*, we have considered excusable neglect in different contexts and repeatedly underscored that it is a difficult standard to satisfy"); *In re Republic Airways Holdings Inc.*, 573 B.R. 84, 91 (Bankr. S.D.N.Y. 2017) ("The Second Circuit has adopted a strict approach to excusable neglect"); *Maqagi v. Horizon Lamps, Inc.*, 2016 WL 7209941, at *2 (E.D. Pa. 2016) (the standard is a strict one and applies only to extraordinary cases). *See generally United States v. Torres*, 372 F.3d at 1163-64 (reversing the district court and holding that there

was no excusable neglect where counsel mis-read the appellate procedure rules); *Biodiversity Conservation Alliance v. Bureau of Land Management*, 438 Fed. App'x 669, 673 (10th Cir. 2011) (same).

      2.    <u>Weighing the *Pioneer* Factors</u>. The Court balances the *Pioneer* factors thusly:

          a.    <u>The Danger of Prejudice to the Trustee</u>. This factor is neutral. To be sure, the main adverse consequence to the Trustee if the motion were granted would be that the claim objection, which the Trustee thought had been finally resolved, would still be pending. That is not the kind of prejudice meant. *See In re Bayer* ("if the motion were granted, the most significant consequence would be [the non-movant's] loss of 'the windfall benefit of an opponent's missed deadline.'") 527 B.R. at 209, (quoting *Pincay v. Andrews,* 351 F.3d 947, 954 (9th Cir. 2003)). On the other hand, there is case law holding that the time and money spent opposing a motion to allow a late-filed appeal is a "discernable amount of prejudice." *Maqagi*, 2016 WL 7209941, at *2, citing *Lima v. Aetna Life Ins. Co.*, 2014 WL 4681040, at *4 (D.N.J.). That applies here.

          b.    <u>The Length of Delay and Potential Impact on Judicial Proceedings</u>. The second factor favors Carla Franco. Her delay was not substantial, and the motion was filed within twenty-one days of the appeals deadline, as allowed under Bankruptcy Rule 8002. Furthermore, the delay would not have any significant impact on judicial proceedings.

          c.    <u>The Reason for the Delay and Whether it was Within the Reasonable Control of the Movant</u>. Ms. Franco gives the following reason for missing the appeal deadline:

> C. Franco and DFL have had to deal with this matter in two bankruptcy cases and at least three different adversaries. This counsel has not spent a great deal of time in bankruptcy court and is not used to the ECF system used in the federal and bankruptcy courts. When the Post-Judgment Motions were filed on October 17, 2018, the deadline to file a notice of appeal had not passed for any of the orders addressed by the Post-Judgment Motions. This counsel thought that when the Post-Judgment Motions were filed into the related adversaries that it would automatically get tagged into the related main bankruptcy case. To the extent that

is incorrect, the failure to file separately into the main bankruptcy case was a technical error and an honest mistake on the part of this counsel.

As an initial matter, there are only two adversary proceedings (16-1074 and 17-1001), not three. Further, the two bankruptcy case have been consolidated, so all filings are made in 03-13492. Counsel had to keep track of and file in three dockets, which is not unduly difficult or complex.

Next, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect." *Pioneer,* 507 U.S. at 392. If counsel really believed that a document filed in an adversary proceeding would "automatically get tagged into the related main bankruptcy case," then he failed to grasp a fundamental aspect of the Court's docketing system. Such a failure is not excusable. More to the point, counsel has been filing in the main case since April 3, 2017, and has filed eight documents, the latest being the motion for an extension of time. Counsel knows how to file in the main case; he simply failed to do so in this instance.

Third, counsel's decision to combine three motions, directed to two adversary proceedings and a contested matter, was a poor one. Had he split the motions, he likely would not have made the filing mistake. The confusing caption, combining both adversary proceedings, does not help.

Finally, Mr. Drennan has experienced bankruptcy co-counsel. If he had any doubts about his ability to file in the main case, he should have consulted his co-counsel. He did not.

"Even where there is no prejudice, impact on judicial proceedings, or trace of bad faith, "[t]he favorable juxtaposition of the[se] factors" does not excuse the delay where the proffered reason is insufficient." *In re Sheedy*, 875 F.3d at 744 (quoting *Hosp. del Maestro v. NLRB*, 263 F.3d 173, 175 (1st Cir. 2001)). Here, the explanation for missing the appeal deadline is insufficient.

    d.    <u>Whether the Movant Acted in Good Faith</u>. There is nothing to suggest that Ms. Franco acted in bad faith. This factor favors her.

Weighing the four factors, the Court finds and concludes that one factor is neutral, two factors favor Ms. Franco, and one factor is against her. Unfortunately for Ms. Franco, the factor weighing against her is the most important one and tilts the scale against granting the extension motion.

## III. CONCLUSION

Carla Franco did not show that her failure to appeal the Claim Disallowance Order timely was the result of excusable neglect. Her motion to extend the time to appeal therefore is not well taken and will be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 12, 2019

Copies to: counsel of record