UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MANUELA Q. FRANCO,

    Debtor.

Case No. 03-13492 tr7
(consolidated with 13-12941)

# OPINION

The Debtor and Carla Franco[1] have been fighting over ownership of certain mineral rights for five years. Debtor claims she owns the minerals even though she did not schedule them in her 2003 or 2013 bankruptcy cases. In December 2016 Carla removed to this court a state court action she had brought against Debtor and others, seeking to quiet title to the minerals. Carla followed the removal with a February 2017 motion for relief from the automatic stay nunc pro tunc, by which she hoped to validate a favorable quiet title judgment entered by the state court prior to removal. The Court denied the motion, finding that there was a bona fide dispute whether the bankruptcy estate owned the mineral rights, and that it was appropriate to give the bankruptcy trustee a chance to litigate ownership.

Now, two and a half years later, Carla again seeks nunc pro tunc stay relief. Her new motion was prompted by the trustee's decision to abandon the claim to the disputed minerals. Having reviewed the history of this consolidated bankruptcy case and the two pending adversary proceedings relating to mineral ownership, the Court concludes that granting nunc pro tunc relief now is not indicated and would not, in any event, achieve Carla's goal of ending or simplifying the dispute. The second nunc pro tunc stay relief motion will therefore be denied.

---

[1] To avoid confusion, the parties (all of whom share the last name of Franco) will be referred to by their first names.

## I. FINDINGS OF FACT[2]

For the limited purpose of ruling on the motion, the Court finds:

<u>The Property and the disputed mineral rights</u>. Debtor is a 91-year-old widow. Her husband, Epolito, suffered a series of strokes between 1989-1996 and died in 1997.

In 1969, Epolito and Debtor acquired about 240 acres of land in Eddy County, New Mexico, which included a half interest in oil, gas, and other minerals on and under the land. On October 8, 1996, Epolito and Debtor conveyed 122 acres of the land to their son Hipolito as his sole and separate property (the "Property"). The deed signed by Epolito and Debtor did not reserve any oil, gas, or other minerals (the "disputed mineral rights" or "disputed minerals").

The original agreement between the parties is unclear. Carla, Hipolito's widow,[3] testified that she and Hipolito paid for the disputed mineral rights and always intended to own them. Debtor testified, on the other hand, that she and Epolito parted with the Property so they could obtain medical care for Epolito. According to her, she and Epolito had always intended to bequeath their mineral rights, including the disputed mineral rights, to their children in equal shares.

<u>The 1998 Loan</u>. In 1998, Hipolito and Carla applied for a loan from Western Commerce Bank. The loan was to be secured by a mortgage on the Property. On July 23, 1998, Guaranty Title Company issued a commitment to insure the bank's first priority mortgage on the Property. The title commitment described the Property as "fee simple in the surface estate only." The metes and bounds description of the Property differed to some extent from that used in the 1996 deed.[4] More

---

[2] The Court takes judicial notice of the docket. In addition, some of the findings are from the Court's earlier opinions entered in this case and the adversary proceedings involving Debtor and Carla.
[3] Hipolito died in about April 2015.
[4] Some survey work may have been done to prepare the legal description in the title commitment. One of the calls in the title commitment legal description is longer by 47.02 feet than the analogous call in the 1996 deed, while another call is shorter by the same amount.

-2-
Case 03-13492-t7   Doc 150   Filed 08/23/19   Entered 08/23/19 15:30:38 Page 2 of 11

importantly, the title commitment's legal description begins with "The surface estate only of . . . ."

One of the requirements for issuing a final policy of title insurance was:

> Record a correction warranty deed from Manuela Q. Franco, widow of Epolito V. Franco (record his death certificate) to Hipolito Q. Franco, a married man dealing in his sole and separate property.

One of the exceptions to the insured title was:

> 11. Title to all of the water, oil, gas and other minerals and mineral substances, together with all right, privileges and easements appurtenant thereto.

On August 7, 1998, Debtor signed a warranty deed in favor of Hipolito. The deed states on page one that it is "given to correct legal description on [the 1996 warranty deed]." The legal description attached is identical to the description in the title commitment, including the "surface estate only" language. Hipolito did not sign the deed.

On August 7, 1998, Hipolito and Carla granted Western Commerce Bank a line of credit mortgage on the Property. The mortgage uses the same legal description as the "correction deed" and the title commitment (including the "surface estate only" language), except that it also purports to encumber the mortgagors' interest in water and water rights appurtenant to the Property. The mortgage secures a promissory note of $38,898.27 payable to Western Commerce Bank, with a maximum obligation limit of $99,000. The mortgage and correction deed were recorded one minute apart.

The Bankruptcy Cases. Debtor filed a chapter 7 case on April 30, 2003, and a second chapter 7 case on September 9, 2013. She received a discharge in each case. The latter case was closed on December 30, 2013.

The Debtor scheduled $12,473.42 in unsecured claims in the 2013 case and $20,812.06 in unsecured claims in the 2003 case.

Debtor did not schedule any mineral rights in either case. There is no evidence that she told her bankruptcy attorneys about any claim to minerals. Manuela did not list Hipolito or Carla as creditors, so they did not receive official notice of either case.

The State Court Action. Both before and after filing the bankruptcy cases, Debtor filed documents in the county records asserting title to the disputed mineral rights. She also entered into oil leases purporting to lease the disputed mineral rights to third parties.

Carla testified that she first learned about Debtor's claims to the disputed mineral rights in 2014, after she was contacted by an oil company. She and Hipolito brought an action against Debtor and others in New Mexico's Fifth Judicial District Court on October 17, 2014, asserting claims: (1) for a judgment quieting title to the disputed minerals; (2) for damages caused by disparagement of title; and (3) for injunctive relief.[5] The trustee was not named.

Carla filed a motion for summary judgment on the quiet title count on March 23, 2016. On April 5, 2016, Carla's counsel sent an email to Debtor's state court counsel, informing him of the 2013 bankruptcy case and noting that the disputed mineral rights had not been scheduled. The email contained a thinly veiled threat that Debtor's chapter 7 discharge could be revoked if she pursued her claim to the disputed minerals. The email also mentioned federal criminal prosecution and Medicare/Medicaid fraud.

On May 3, 2016, Debtor filed a response to the summary judgment motion, stating that she "does not intend to file a brief in response to the motion.[6]

---

[5] The state court dismissed the disparagement count on April 15, 2015. The injunction count is still pending.
[6] Later court filings make clear that the reason Debtor took this position was that her counsel had become aware of the bankruptcy cases, and therefore of the fact that the claim to the disputed minerals was owned by the trustee, not Debtor.

On May 4, 2016, Carla filed a motion for a Rule 1-1054(b)(1) certification, arguing inter alia that Debtor lacked standing to appeal any summary judgment because she had not disclosed her claim to the disputed mineral rights in her bankruptcy cases.

On May 18, 2016, the state court entered an order granting Carla's summary judgment motion on the quiet title claim. The court set the order aside on May 25, 2016, stating it had been entered inadvertently.

Debtor filed a notice of bankruptcy and automatic stay in the state court action on August 30, 2016. Despite this and other notices that the bankruptcy estate claimed an interest in the disputed minerals, on November 4, 2016, the state court again granted Carla summary judgment on the quiet title count.

Debtor promptly filed a motion for reconsideration. A week later the trustee filed a motion to substitute or intervene. Carla opposed both motions.[7] Before the state court could rule, Carla removed the action to this Court, commencing adversary proceeding 16-1074 (the "Removed Proceeding").

<u>Reopening the Bankruptcy Cases</u>. In June 2016, Debtor asked that the 2013 case be reopened so she could amend schedule B and list the disputed and other mineral rights. The Court granted the motion, as well as the United States Trustee's motion to reopen the 2003 bankruptcy

---

[7] In her opposition, Carla described the argument that the automatic stay applied to the mineral ownership dispute as "*ridiculous*" (emphasis in original). Given the clear law to the contrary (*see, e.g.*, 11 U.S.C. § 362(c)(1); *Bernstein-Burkley, P.C. v. Chaney*, 2014 WL 3417522, at *4 (M.D. Fla.); *In re Muhlig*, 494 B.R. 755 (Bankr. S.D. Fla. 2013); *Aflatouni v. Montoya*, 2015 WL 1956357, at 5 (Tex. App.); *In re Pace*, 159 B.R. 890, 899-900 (9th Cir. BAP 1993), *reversed in part on other grounds*, 67 F.3d 187 (9th Cir. 1995); *In re Enyedi*, 371 B.R. 327, 333-34 (Bankr. N.D. Ill. 2007); *In re Lopez*, 283 B.R. 22, 32 (9th Cir. BAP 2002) (concurring opinion); *Snider v. Sherman*, 2007 WL 1174441, at *37 (E.D. Cal.)), Carla's argument was not helpful to the state court.

case. Clarke Coll was appointed the chapter 7 trustee in both cases, which were consolidated. On July 15, 2016, Debtor filed an amended Schedule B, adding:

> Mineral Rights and Interest: See attachment for full description. Total mineral acres of 850. Debtor holds ½ interest in mineral acres worth approximately $1,500.00 per acre.

Debtor valued the mineral rights at $637,000. The attachment states that the mineral rights are in three parcels (240 acres, 290 acres, and 320 acres).

Litigation of the Removed Proceeding in Bankruptcy Court. On January 16, 2017, the trustee filed a motion to dismiss the Removed Proceeding because it was filed in violation of the automatic stay and therefore was void. In response, Carla filed a motion for relief from stay nunc pro tunc, essentially asking that the summary judgment entered by the state court be allowed to stand. The Court held an evidentiary hearing on both motions. On July 28, 2017, the Court ruled that the quiet title count of the Removed Proceeding was void and must be dismissed. The Court denied Ms. Franco's motion for relief from stay nunc pro tunc.

On April 2, 2018, Carla filed a motion to amend her complaint to reassert her disparagement of title claim.[8] On October 3, 2018, the Court denied the motion to amend. Carla's appeal of this ruling is pending in the district court. Currently, the only pending claim in the Removed Proceeding is Carla's request for injunctive relief.

The Trustee's Quiet Title Proceeding. Consistent with his motion to dismiss the Removed Proceeding, on January 16, 2017, the trustee filed an adversary proceeding seeking to quiet title to the disputed minerals (the "Bankruptcy Proceeding"). Carla answered the complaint and asserted a counterclaim and a third party claim. The trustee and Debtor moved to dismiss the counterclaim

---

[8] Her first motion to amend, filed May 4, 2016 (before removal), did not attach a proposed amended complaint, as required by state and federal rules.

and third party claim. After the Court granted the motions in part, the only remaining counts in the Bankruptcy Proceeding are the claim, counterclaim, and third party claim to quiet title. Debtor and Carla appear ready to try the quiet title claim.

Activity in the Main Bankruptcy Case. Carla filed a proof of claim in the case, to which the trustee objected. On October 5, 2018, the Court sustained the claim objection but did not rule on the ownership of the disputed minerals. Carla has appealed the Court's ruling. In the meantime, the trustee discovered another estate asset (10.6 mineral acres), which he was able to sell for $10,000 per acre. The Court approved the sale in May 2018. The net proceeds were enough to make the estate solvent, so the trustee gave notice in February 2019 of his intent to abandon his claim to the disputed mineral rights. No objections were filed, so the claim has been abandoned.[9]

## II. DISCUSSION

Carla argues that the automatic stay should be annulled so, inter alia, the state court's November 4, 2016, summary judgment can be resurrected.

The Court has authority to "annul" the automatic stay under § 362(d) for cause.[10] Annulment is retroactive relief, by which the Court may validate actions taken in violation of the stay that would otherwise be void. *See Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969, 977 (1st Cir. 1997); *In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir. 1984); *In re Schumann*, 546 B.R. 223, 228 (Bankr. D.N.M. 2016). The Tenth Circuit discussed this authority in *Franklin Savings Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020 (10th Cir. 1994):

> The Director, aware of the bankruptcy petition of Franklin, chose to file a bill of costs in district court prior to seeking relief from the bankruptcy court's stay.

---

[9] The automatic stay no longer applies to the mineral ownership dispute. *See* 11 U.S.C. §§ 362(c)(1) and 554(a).

[10] 11 U.S.C. § 362(d) provides in part "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, *annulling*, modifying, or conditioning such stay-- . . . for cause . . . ." (emphasis added).

> Finally recognizing the obvious violation of the stay, the Director requested a lift of the stay "now for then." While district courts and bankruptcy courts have the authority to "annul" a stay, 11 U.S.C. § 362(d), thereby reinstating previous claims retroactively, such a result is rare and probably available only to claimants who were honestly ignorant of the bankruptcy stay. *See Matter of Pinetree, Ltd.,* 876 F.2d 34, 38 (5th Cir. 1989); *In re Albany Partners, Ltd.,* 749 F.2d 670, 675–76 (11th Cir. 1984) . . . . The Director can claim no honest ignorance of the bankruptcy stay, nor has the Director offered any reason why the stay should be lifted "for cause." 11 U.S.C. § 362(d)(1). The Director should not be rewarded for failing to seek relief from the stay at any time after the filing of the petition . . . .

31 F.3d at 1023 (footnote omitted).

Stay annulment is extraordinary relief, to be awarded only in rare instances. *In re Soares*, 107 F.3d at 977 (annulment should be the "long-odds exception" with facts that are "both unusual and unusually compelling"); *Mataya v. Kissinger (In re Kissinger),* 72 F.3d 107, 109 (9th Cir. 1995) (only in extreme circumstances); *Schumann*, 546 B.R. at 228 (rare); *In re Pulley*, 196 B.R. 502, 504 (Bankr. W.D. Ark. 1996) (extreme circumstances).

The Court has not found a case granting nunc pro tunc relief (i) going back five years, to the very commencement of the proceeding; (ii) two and a half years after the parties became aware of the automatic stay; and (iii) after removal to and substantial litigation in bankruptcy court. Rather, the typical annulment case involves a specific action taken post-petition in ignorance of the automatic stay. *See, e.g., In re Fjeldsted*, 293 B.R. 12, 15 (9th Cir. BAP 2003) (foreclosure sale); *In re Kohar*, 525 B.R. 248, 252 (Bankr. W.D. Pa. 2015) (foreclosure sale); *In re Kissinger*, 72 F.3d 107 (9th Cir. 1995) (jury verdict of malpractice); *In re Albany Partners, Ltd.*, 749 F.2d 670, 672 (11th Cir. 1984) (foreclosure sale).

In addition, the creditor seeking nunc pro tunc relief must file the motion promptly. *See, e.g., In re Fjeldsted*, 293 B.R. at 25 (one factor to weigh is how quickly the creditor moved for annulment after learning of the stay); *In re Kohar*, 525 B.R. at 250 (creditor filed emergency motion for nunc pro tunc relief as soon as it was alerted to the bankruptcy filing); *In re Kissinger*,

72 F.3d at 108 (creditors immediately sought nunc pro tunc relief); *In re Albany Partners*, 749 F.2d at 672 (annulment motion filed 10 days after the petition date); *S. Dallas Water Auth. v. Guarantee Co. of N. Am., USA*, 767 F. Supp. 2d 1284, 1297–98 (S.D. Ala. 2011) (upon learning of an unintentional stay violation, creditor must act promptly to restore the pre-violation status quo); *In re Soares*, 107 F.3d at 978 (creditor should not receive retroactive stay relief where it remains silent and allows state court to act in ignorance of stay).

Factors relevant to whether the Court should annul the stay include:

1) whether the creditor had actual or constructive knowledge of the debtor's bankruptcy filing when it acted in violation of the automatic stay;
2) whether the debtor filed the bankruptcy case in bad faith or otherwise acted in bad faith;
3) whether "grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation";
4) how quickly the creditor sought annulment of the automatic stay upon learning of the debtor's bankruptcy filing;
5) whether the creditor continued to violate the stay after learning of the debtor's bankruptcy filing;
6) whether the debtor remained "stealthily silent" in the face of the creditor's unknowing violation of the automatic stay; and
7) whether the creditor would be prejudiced if the stay were not annulled.

*In re Schumann*, 546 B.R. at 228-29; *In re Barr*, 318 B.R. 592, 598 (Bankr. M.D. Fla. 2004); *In re Fjeldsted*, 293 B.R. at 25 (listing 12 factors).

The Court analyzes the *Schumann* factors as follows:

| Factor | Discussion |
|---|---|
| Creditor's knowledge of bankruptcy filing. | There is no evidence Carla had knowledge of the bankruptcy filings when she filed the state court action. However, she knew of the bankruptcies by April 5, 2016, yet continued to seek a quiet title judgment, while arguing that Debtor did not have standing to oppose it because of the bankruptcy cases. This factor weighs against Carla. |
| Debtor's bad faith. | The bankruptcy petitions were not filed in bad faith. Debtor's failure to schedule the disputed mineral rights was |

| | a serious omission but is a separate issue from whether the cases themselves were filed in bad faith. |
|---|---|
| Grounds for relief from stay. | Had Carla and Hipolito filed a motion for relief from automatic stay before they brought the state court action, it likely would have been denied. If a claim to ownership of estate assets has not yet been brought, bankruptcy courts prefer it to be brought in bankruptcy court, to ensure timely and efficient case administration. |
| How quickly creditor sought to annul the stay. | This factor weighs against annulling the stay. The parties have been litigating the disputed mineral title issues for more than five years, and have known about the stay for at least three years. |
| Creditor's continuing violations. | Carla continued to prosecute the state court action after she learned of the bankruptcy cases. Instead of halting the proceeding, she sought summary judgment and argued that Debtor did not have standing to respond. This factor weighs against annulling the stay |
| Debtor's silence in face of creditor's unknowing violation. | Debtor did not remain "stealthily silent" or wait for a dispositive ruling to be issued. From what the Court has been able to glean, her state court lawyers took appropriate action as soon as they learned about the automatic stay. It appears the state court lawyers for both sides learned about the bankruptcy cases at about the same time. |
| Prejudice to creditor. | Carla will not be prejudiced by denying the second annulment motion. If the motion were granted, she would have to relitigate the quiet title dispute anyway because the state court's summary judgment order would have to be set aside. |

The *Schumann* factors weigh heavily against nunc pro tunc stay relief.

Further, nunc pro tunc stay relief would not achieve the result Carla wants. If the requested relief were granted, all actions taken in the Removed Proceeding would be revived, including the quiet title summary judgment. Also revived, however, would be Debtor's motion for reconsideration, which has merit—the summary judgment was improper because the real party in interest had not been named.[11] Now that the trustee has abandoned the claim, Debtor is free, unlike

---

[11] The state court may have entered the summary judgment based on the mistaken view, urged by Carla in her opposition to the motion to reconsider, that the automatic stay did not apply to the dispute.

in May 2016, to file a brief in opposition to summary judgment. Whether the dispute ultimately is decided in this Court or in state court,[12] Carla will not be able to rely on the November 4, 2016, summary judgment.

Promptly seeking to validate a specific action that was taken in state court due to ignorance of a bankruptcy filing is one thing; asking the Court to declare a mulligan after five years of state and bankruptcy court litigation is something else. The Court concludes that this is not an appropriate case for annulling the automatic stay. The state court never had a chance to try the disputed minerals ownership issue between the real parties in interest. Its summary judgment would have to be set aside. Stay annulment now would cause confusion without simplifying the litigation.

### III.  CONCLUSION

This case was not a good candidate for stay annulment two and a half years ago and is not a good candidate now. Nunc pro tunc stay relief would not fix the state court summary judgment, which would have to be set aside. The requested relief therefore would cause confusion without speeding the end of the litigation. The motion will be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered:  August 23, 2019
Copies to: electronic notice recipients

---

[12] Granting Carla's motion would not have constituted a remand of the Removed Proceeding.